IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ELWOOD HERTZOG, individually and on behalf of other similarly situation individuals,

    Plaintiff,

v.

1) QUIBIDS, L.L.C.;
2) QUIBIDS HOLDINGS, L.L.C.;
3) AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.;
&
4) HSBC USA INC.,

    Defendants.

Case No. CIV-12-786-F

## REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS BY DEFENDANT HSBC USA INC.

Louis Smith, NJA # 20231993
  (admitted *pro hac vice*)
Jason Kislin, NJA # 033332003
  (admitted *pro hac vice*)
**GREENBERG TRAURIG, LLP**
200 Park Avenue
Florham Park, NJ 07932
(973) 360-7900 | (973) 301-8410 (fax)
smithlo@gtlaw.com
kislinj@gtlaw.com

AND

Sidney G. Dunagan, OBA # 2524
Gregory T. Metcalfe, OBA # 19526
**GABLEGOTWALS, P.C.**
One Leadership Square, 15th Fl.
211 North Robinson
Oklahoma City, OK 73102-7101
(405) 235-5500 | (405) 235-2875 (fax)
SDunagan@gablelaw.com
GMetcalfe@gablelaw.com

*Attorneys for Defendant HSBC USA Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................2

I. *REVES* AND ITS PROGENY COMPEL DISMISSAL OF THE SECTION 1962(c) CLAIM AGAINST HSBC ......................................................................................................2

II. HSBC CANNOT BE VIEWED AS PART OF A RICO ENTERPRISE .............................6

III. THE COMPLAINT FAILS TO ALLEGE THAT HSBC ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY .....................................................................................7

IV. PLAINTIFF FAILS TO ALLEGE A RICO INJURY .........................................................8

V. PLAINTIFF FAILS TO ALLEGE CAUSATION REGARDING HSBC ...........................8

VI. PLAINTIFF'S CONSPIRACY CLAIM FAILS ..................................................................9

VII. PLAINTIFF'S CLAIM UNDER WASHINGTON STATE GAMBLING STATUTE FAILS ................................................................................................................................10

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*, 566 U.S. 662 (2009) ........................................................................ 7

*BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089 (10th Cir. 1999) ...... 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 7

*Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681 (8th Cir. 2008) ..................... 3, 4

*Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200 (C.D. Ca. 2006) ................ 4, 5

*Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010) ....................................... 9

*In re MasterCard Int'l Inc. Internet Gambling Litig.*, 132 F. Supp. 2d 468
 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002) ................................................. 6

*Jubelirer v. MasterCard Int'l*, 68 F. Supp. 2d 1049 (W.D. Wisc. 1999) ......................... 6

*Kendall v. Visa U.S.A.*, 518 F.3d 1042 (9th Cir. 2008) ............................................... 1, 2

*Price v. Pinnacle Brands, Inc.*, 138 F.3d 602 (5th Cir. 1998) ........................................ 8

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ................................................................ 2

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ......................................................... 3, 8, 9

*United States v. Harris*, 695 F.3d 1125 (10th Cir. 2012) ............................................... 9

*United States v. Shifman*, 124 F.3d 31 (1st Cir. 1997) ................................................... 4

**State Cases**

*Keithly v. Sanders*, 285 P.3d 225 (Wash. Ct. App. 2012) ............................................. 10

**Federal Statutes**

18 U.S.C. § 1955 ............................................................................................................ 7

18 U.S.C. § 1955(b)(1)(i) ............................................................................................... 7

18 U.S.C. § 1962(a), *et seq.* ................................................................ 6, 9, 10

18 U.S.C. § 1964(c) .................................................................................... 8

31 U.S.C. § 5362(2) .................................................................................... 7

31 U.S.C. § 5367 ........................................................................................ 7

31 U.S.C. §§ 5361-67 ................................................................................ 6

**Miscellaneous**

BLACK'S LAW DICTIONARY (9th ed. 2009) ................................................ 10

Defendant HSBC USA, Inc. ("HSBC") respectfully submits this brief in reply to the response of Plaintiff to its motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

In his response brief, Plaintiff does not contend that he has standing to bring his claims because he has or used a HSBC credit card. Instead, because HSBC allegedly provided lending in connection with credit-card transactions for individuals other than Plaintiff, who himself does not allege any dealing, interaction, or contact with HSBC, Plaintiff purports to have standing to pursue his claims. As explained in HSBC's moving brief, Plaintiff may only pursue claims on his own behalf and accordingly lacks standing to assert claims against HSBC.

Presumably in an effort to distinguish the wealth of authority directly rejecting his claims, Plaintiff focuses on an alleged role played by HSBC as an "acquiring bank" as opposed to an "issuing bank." Plaintiff's Response Brief ("Response") at 2. Plaintiff's submission makes clear that he is still focusing on HSBC's alleged role in processing credit-card transactions, but contends that an acquiring bank "accepts the risk that the merchant will remain solvent over time," and thus has an incentive to support the merchant's business. Response at 2 n.1 (*citing Kendall v. Visa U.S.A.*, 518 F.3d 1042 (9th Cir. 2008)).

As an initial matter, the acquiring versus issuing distinction is irrelevant for purposes of disposing of Plaintiff's claims against HSBC. Instead, the reasoning and conclusions of the numerous authorities set forth by HSBC in its moving submission reflect that financial-services providers involved in credit-card

transactions cannot be held liable under RICO for alleged illegal gambling conducted by the merchant.

In any event, the case that Plaintiff cites to support his contention actually completely undermines it. The court in *Kendall* explains that the "issuing bank pays the acquiring bank," and addresses the payment-related risks as follows:

> The difference between what the two banks keep represents the difference between the greater risk the issuing bank and Visa have that the consumer will not pay compared to the lesser risk the acquiring bank has that the issuing bank will not pay.

*Id.* at 1046. Thus, according to Plaintiff's own authority, the risk facing the acquiring bank is that the <u>issuing bank</u> will remain solvent. Plaintiff's attempt to draw significance from HSBC's alleged status as an acquiring bank thus is meritless.

## ARGUMENT

### I. *REVES* AND ITS PROGENY COMPEL DISMISSAL OF THE SECTION 1962(c) CLAIM AGAINST HSBC

As HSBC explained in its moving brief, the Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) narrowly interpreted section 1962(c) to cover only those who "participate in the operation or management of the enterprise itself." Case law in the Tenth Circuit and elsewhere makes clear that the allegations in the Complaint directed towards HSBC fail to rise to the level required by the Supreme Court.

Plaintiff purports to distinguish *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089 (10th Cir. 1999) and *Tal v. Hogan*, 453 F.3d 1244 (10th

Cir. 2006) by contending that the defendants in those cases were not alleged to have committed predicate acts. But the requirement regarding the commission of predicate acts is separate and apart from the requirement that a defendant operate or manage the enterprise. And as the analysis in *BancOklahoma* and *Tal* shows, Plaintiff has failed to allege, as he must, that HSBC operated or managed the alleged enterprise. There are no allegations that HSBC had any involvement in deciding how QuiBids auctions would be conducted, what QuiBids' disclosures addressing the auctions would state, or how QuiBids should run its business.

In attempting to distinguish the authorities cited by HSBC in its motion to dismiss, Plaintiff now emphasizes that HSBC acted as an "acquiring bank" that provided "short term financing" to QuiBids. Response at 2. While the effort to distinguish HSBC's authorities fails, Plaintiff's attempt to shift the focus to lending to QuiBids and alleged related risk does not help his RICO claim survive.

It is well settled that a "bank's financial assistance and professional services may assist a customer in engaging in racketeering activities, but that alone does not satisfy the stringent 'operation and management' test of *Reves*." *Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 690 (8th Cir. 2008). Here, at best Plaintiff alleges that HSBC entered into a standard agreement to provide banking services, and that is completely insufficient. Indeed, Plaintiff cites no authority extending RICO liability to a financial institution based on an alleged lending relating to credit-card transactions.

Cir. 2006) by contending that the defendants in those cases were not alleged to have committed predicate acts. But the requirement regarding the commission of predicate acts is separate and apart from the requirement that a defendant operate or manage the enterprise. And as the analysis in *BancOklahoma* and *Tal* shows, Plaintiff has failed to allege, as he must, that HSBC operated or managed the alleged enterprise. There are no allegations that HSBC had any involvement in deciding how QuiBids auctions would be conducted, what QuiBids' disclosures addressing the auctions would state, or how QuiBids should run its business.

In attempting to distinguish the authorities cited by HSBC in its motion to dismiss, Plaintiff now emphasizes that HSBC acted as an "acquiring bank" that provided "short term financing" to QuiBids. Response at 2. While the effort to distinguish HSBC's authorities fails, Plaintiff's attempt to shift the focus to lending to QuiBids and alleged related risk does not help his RICO claim survive.

It is well settled that a "bank's financial assistance and professional services may assist a customer in engaging in racketeering activities, but that alone does not satisfy the stringent 'operation and management' test of *Reves*." *Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 690 (8th Cir. 2008). Here, at best Plaintiff alleges that HSBC entered into a standard agreement to provide banking services, and that is completely insufficient. Indeed, Plaintiff cites no authority extending RICO liability to a financial institution based on an alleged lending relating to credit-card transactions.

Beyond that, in light of *Reves* and the need to demonstrate participation in the operation or management of the enterprise, at best any effort to try to place RICO liability arising from lending will be limited to the "principal lender." *Dahlgren*, 533 F.3d at 690. Here, there are no allegations that HSBC was the principal lender or even a significant lender. Plaintiff sued two financial institutions in this case, but there could be other similarly situated financial institutions involved in credit-card transactions that Plaintiff opted not to name. QuiBids also may have a commercial lender that funds its operations that is separate and apart from the credit-card related lending upon which Plaintiff seeks to base liability on HSBC. In sum, Plaintiff has failed to include sufficient allegations regarding the scope of HSBC's role to rise to the level of participation demanded in *Reves*.

In challenging that analysis, Plaintiff relies principally on *United States v. Shifman*, 124 F.3d 31 (1st Cir. 1997) and *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200 (C.D. Ca. 2006). *Shifman* involved a loan-sharking operation where people were physically injured if they failed to pay exorbitant interest rates. Shifman knew loan-sharking was involved, but nevertheless referred victims to the loan shark who otherwise would have not known about the loan shark's existence and thus would otherwise not have taken out extortionate loans. *Id.* at 34. Indeed, Shifman "set up" certain victims by initially promising legitimate financing, which never materialized, and then directed the desperate victims to the loan shark. *Id.* at 36.

While the court in *Gonzales* recognized that the "provision of banking services is not enough" to impose RICO liability, 532 F. Supp. 2d at 1210, the bank under scrutiny accepted wires from, and sent wire to, victims of a Ponzi scheme, which were improperly comingled with other funds, at a time when the bank had actual knowledge of the Ponzi scheme. Investors wired to the bank approximately 90 percent of the $135 million involved in the fraud. *Id.* at 1204. Indeed, the bank allegedly deliberately misled an investor during a telephone call. *Id.* at 1211.

Here, the situation is far from afield from *Shifman* and *Gonzales*. While loan-sharking and Ponzi schemes are patently illegal activities and were recognized as such by the defendants in *Shifman* and *Gonzales*, QuiBids vigorously denies that it is engaged in gambling or wrong-doing. Complaint at ¶ 21. Unlike the situations in *Shifman* and *Gonzales*, there are no allegations that HSBC reached out to consumers in an effort to direct them to QuiBids, or made any representations regarding QuiBids, as opposed to merely providing services related to consumer-initiated transactions.

Additionally, while the activities of the defendants in *Shifman* and *Gonzales* allegedly were critical for the wrong-doing to take place, per the Complaint, QuiBids accepts credit cards from several issuers (HSBC and American Express are named as defendants and Plaintiff used a credit card but has not alleged if it was issued by one of those entities or some other). There are no allegations that HSBC was the primary lender for QuiBids or even an important

source of lending. Any contention that HSBC could or did exercise some sort of control over QuiBids is completely conclusory and lacking in any supporting factual allegations.

Because Plaintiff fails to allege facts demonstrating that HSBC was involved in the operation or management of the alleged enterprise, the civil RICO claim under 18 U.S.C. § 1962(c) should be dismissed.

## II. HSBC CANNOT BE VIEWED AS PART OF A RICO ENTERPRISE

As discussed previously, Plaintiff's effort to distinguish *In re MasterCard Int'l Inc. Internet Gambling Litig.* 132 F. Supp. 2d 468 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002) and *Jubelirer v. MasterCard Int'l*, 68 F. Supp. 2d 1049 (W.D. Wisc. 1999) based on the purported distinction between an issuing and acquiring bank fails. The above authorities demonstrate that financial-services providers involved with credit-card transactions cannot be included as a part of RICO enterprise or otherwise be held liable for alleged gambling conducted by the merchant.

Plaintiff's reliance on the federal Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA"), 31 U.S.C. §§ 5361-67 to support its contention that HSBC was part of a RICO enterprise is misguided. Nothing in the UIGEA undermines the analysis in *In re MasterCard Int'l Inc. Internet Gambling Litig.* and *Jubelirer* that the elements of RICO cannot be satisfied to place liability on financial-services providers involved in processing credit-card transactions. Moreover, as set forth in its moving brief, the UIGEA does not create a private

right of action and therefore cannot be enforced by Plaintiff. In any event, credit card companies and banks are generally exempt from potential liability under the UIGEA, 31 U.S.C. § 5362(2), and only face potential exposure if the financial institution "has actual knowledge and control of bets and wagers" and owns or operates the website where unlawful bets are placed, 31 U.S.C. § 5367, a situation extremely distant from the allegations in Plaintiff's Complaint.

### III. THE COMPLAINT FAILS TO ALLEGE THAT HSBC ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY

In its moving brief, HSBC described the predicate acts alleged in the Complaint and noted that only one such act was directed at HSBC (an alleged violation of the federal Illegal Gambling Business Act ("IGBA"), 18 U.S.C. § 1955, Complaint at ¶¶ 60-62). Plaintiff provides an identical description. Response at 4. Plaintiff does not contest that a violation of the IGBA requires proof that the defendant violated the law of a state. 18 U.S.C. § 1955(b)(1)(i). Because Plaintiff in his RICO claim fails to identify, let alone demonstrate, any state law that HSBC purportedly violated, the RICO claim fails.

To the extent that Plaintiff now somehow purports to support his RICO predicate act obligations based on alleged violations of Oklahoma, Washington, or some other state law, such an effort runs afoul of the pleading requirements in *Ashcroft v. Iqbal*, 566 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In any event, HSBC in its moving brief addressing the third count of the Complaint demonstrated that Plaintiff failed to state a claim under

7

Washington law and that state gambling laws cannot be used to impose liability on financial institutions in connection with credit-card transactions. Beyond that, if the Court deems it necessary for HSBC further to address Oklahoma law, HSBC adopts the arguments of the co-Defendants herein in their motions to dismiss.

Moreover, Plaintiff completely fails to demonstrate a "pattern" of activity, meaning "a relationship between the predicate acts and a threat of continuing activity." *Tal*, 453 F.3d at 1267-68. Plaintiff has no allegations regarding when HSBC began its relationship with QuiBids, whether it is on-going or has ceased, or the number or volume of transactions processed.

## IV. PLAINTIFF FAILS TO ALLEGE A RICO INJURY

Plaintiff contends that he lost money as a result of "misleading" disclosures on the QuiBids website. Response at 22. Instead of trying to seek relief under consumer-protection statutes, Plaintiff overreaches with RICO, an effort that fails because the alleged injury is not sufficiently concrete to result in an injury to property for purposes of RICO. *See, e.g., Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing.").

## V. PLAINTIFF FAILS TO ALLEGE CAUSATION REGARDING HSBC

Plaintiff does not allege that he has or had any relationship or interaction with HSBC. While that precludes Plaintiff from having standing to assert claims against HSBC, it also eliminates the possibility that Plaintiff's alleged damages occurred "by reason of" the actions of HSBC. 18 U.S.C. § 1964(c).

Plaintiff seeks to place RICO liability on HSBC for providing lending to QuiBids in its capacity as an "acquiring bank" in connection with the credit-card transactions, but does not allege that HSBC was a primary lender or even an important lender. Another alleged acquiring bank is named as a defendant, but there could be several more (as well as other types of lenders). Plaintiff has no allegations addressing the volume of transactions HSBC processed or the time period involved, and thus does not contend that absent HSBC's involvement QuiBids would not have operated. Thus, Plaintiff has failed to allege that "but for" the involvement of HSBC, Plaintiff would not have engaged in transactions with QuiBids and allegedly lost money. *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989 (2010).

In any event, Plaintiff's allegations fail to demonstrate the required "direct relationship" between Plaintiff's alleged injury and the alleged conduct of HSBC. *Id.* Because Plaintiff has failed to allege the required causal relationship between the alleged conduct of HSBC and Plaintiff's alleged injury, his claim under section 1962(c) should be dismissed.

## VI. PLAINTIFF'S CONSPIRACY CLAIM FAILS

Plaintiff cites *United States v. Harris*, 695 F.3d 1125 (10th Cir. 2012) and contends that he does not need to prove the existence of an enterprise to establish conspiracy liability under 18 U.S.C. § 1962(d). But even if Plaintiff need not prove an enterprise, he still fails to allege the numerous other required elements to state a RICO claim and therefore the conspiracy claim fails. *Tal*, 453 F.3d at 1270

("If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law.").

## VII. PLAINTIFF'S CLAIM UNDER WASHINGTON STATE GAMBLING STATUTES FAILS

In its moving brief, HSBC explained the various defects in Plaintiff's effort to impose liability against HSBC under Washington's gambling statutes. Plaintiff completely fails to undermine those arguments. Among other failings, Plaintiff provides no authority to support his contention that the term "proprietor" in Section 4.24.070 should be interpreted so broadly as to cover HSBC. In addressing an undefined term in a statute, Washington courts look to "ordinary meaning." *Keithly v. Sanders*, 285 P.3d 225, 228 (Wash. Ct. App. 2012) (utilizing Black's Law Dictionary to determine ordinary meaning). The ordinary meaning of "proprietor" is an "owner, especially one who runs a business." Black's Law Dictionary (9th ed. 2009). HSBC is not alleged to be an owner of QuiBids, and thus it does not fit within the ordinary meaning of proprietor. Accordingly, the claim against HSBC under Washington law fails and should be dismissed.

## CONCLUSION

For all the foregoing reasons, HSBC respectfully requests that the Court grant its motion, dismiss the Complaint as against HSBC in its entirety with prejudice, and award HSBC any further relief the Court deems appropriate.

Dated: January 11, 2013

Respectfully submitted,

s/ Louis Smith
Louis Smith (admitted *pro hac vice*)
Jason Kislin (admitted *pro hac vice*)
**GREENBERG TRAURIG, LLP**
200 Park Avenue
Florham Park, NJ 07932
(973) 360-7900 | (973) 301-8410 (fax)
smithlo@gtlaw.com
kislinj@gtlaw.com

Sidney G. Dunagan, OBA # 2524
Gregory T. Metcalfe, OBA # 19526
**GABLEGOTWALS, P.C.**
One Leadership Square, 15th Fl.
211 North Robinson
Oklahoma City, OK 73102-7101
(405) 235-5500 | (405) 235-2875 (fax)
SDunagan@gablelaw.com
GMetcalfe@gablelaw.com

*Attorneys for Defendant HSBC USA, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

- Michael K Avery
- Randall K Calvert
- Bret D Davis
- Sidney G Dunagan
- William W Houck
- Michael D McClintock
- Rabindranath Ramana
- Reid E Robison
- Gregory T Metcalfe
- Michael K Avery
- Jason H Kislin
- Joseph M Kelleher
- Andrew B Joseph
- Seamus C Duffy

                                                                     s/ Louis Smith  
                                                                     Louis Smith