# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ELWOOD HERTZOG, individually         )
and on behalf of other similarly situated    )
individuals,                          )
                                      )
                Plaintiff,            )
                                      )
v.                                    )         Case No. CIV-12-786-F
                                      )
QUIBIDS, LLC; QUIBIDS HOLDINGS,       )
LLC; AMERICAN EXPRESS TRAVEL          )
RELATED SERVICES COMPANY,             )
INC.; and HSBC USA INC.,              )
                                      )
                Defendants.           )

---

## QUIBIDS DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

---

DATED:  January 11, 2013          Reid E. Robison, OBA #7692
                                  Michael D. McClintock, OBA #18105
                                  Michael K. Avery, OBA #22476
                                  McAfee & Taft A Professional Corporation
                                  10th Floor, Two Leadership Square
                                  211 North Robinson Avenue
                                  Oklahoma City, OK  73102
                                  Telephone:    (405) 235-9621
                                  Facsimile:    (405) 235-0439

                                  **ATTORNEYS FOR DEFENDANTS
                                  QUIBIDS LLC AND QUIBIDS
                                  HOLDINGS LLC**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION ......................................................................................................................1

ARGUMENT & AUTHORITIES.................................................................................................2

   I.   Hertzog's RICO Claims Fail Because He Lacks Standing. ...............................................2

     A.   Hertzog Has Not Alleged Injury to His Business Or Property. ..................................2

     B.   Hertzog Has Not Adequately Alleged Causation Or Reliance....................................4

   II.   Hertzog Cannot State a Plausible RICO Enterprise Or Predicate Act. .........................7

     A.   Hertzog Has Not Alleged a RICO Enterprise.............................................................7

     B.   Hertzog's Allegations of Predicate Acts Are Inadequate. ...........................................9

   III.  Hertzog's RICO Conspiracy Claim Fails As a Matter of Law.......................................12

   IV.  Hertzog's State Law Claims Should Be Dismissed. .......................................................14

CONCLUSION ........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Adell v. Macon Cnty. Greyhound Park, Inc.,*
    785 F. Supp. 2d 1226 (M.D. Ala. 2011) ................................................................. 3

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................. 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................. 5

*Bridge v. Phoenix Bond & Indemnity Co.,*
    553 U.S. 639 (2008) .................................................................................................. 6

*Bridgewater v. Double Diamond-Del., Inc.,*
    No. 3:09-CV-1758, 2011 WL 1671021 (N.D. Tex. Apr. 29, 2011) ....................... 6

*Brouwer v. Raffensperger, Hughes & Co.,*
    199 F.3d 961 (7th Cir. 2000) ................................................................................. 13

*Classic Oldsmobile-Cadillac-GMC Truck, Inc. v. State,*
    704 A.2d 333 (Me. 1997) ....................................................................................... 15

*Deppe v. Tripp,*
    863 F.2d 1356 (7th Cir. 1988) ................................................................................. 5

*First Nat'l Bank & Trust Co. of Muskogee v. Muskogee Discount House,*
    382 P.2d 137 (Okla. 1963) ..................................................................................... 10

*Green v. Aztar Corp.,*
    No. 02-C-3514, 2003 WL 22012205 (N.D. Ill. Aug. 22, 2003) .............................. 3

*Jubelirer v. MasterCard Int'l, Inc.,*
    68 F. Supp. 2d 1049 (W.D. Wis. 1999) .................................................................. 7

*Major League Baseball Props., Inc. v. Price,*
    105 F. Supp. 2d 46 (E.D.N.Y. 2000) ...................................................................... 4

*Marlow v. Allianz Life Ins. Co. of N. Am.,*
    No. 08-cv-752, 2009 U.S. Dist. LEXIS 43502 (D. Colo. May 12, 2009) ............. 13

*Meacham v. Halley,*
    103 F.2d 967 (5th Cir. 1939) ................................................................................. 10

*Miller v. Yokohama Tire Corp.,*
    358 F.3d 616 (9th Cir. 2004) ................................................................................. 10

*Nelson v. MGM Grand Hotel, LLC,*
   287 F. App'x 587 (9th Cir. 2008) ....................................................................11

*Paycom Billing Services, Inc. v. Payment Resources International,*
   212 F. Supp. 2d 732 (W.D. Mich. 2002) .........................................................8

*Perry v. Laidlaw Transit Servs., Inc.,*
   234 F. App'x 634 (9th Cir. 2007) ..................................................................12

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993) ........................................................................................9

*Schwartz v. Upper Deck Co.,*
   104 F. Supp. 2d 1228 (S.D. Cal. 2000) ...........................................................3

*Senior v. Page,*
   No. 10-2886 (RBK/JS), 2011 WL 995942 (D.N.J. Mar. 16, 2011) ...............6

*United States v. Harris,*
   695 F.3d 1125 (10th Cir. 2012) ...............................................................12, 13

*United States v. Leahy,*
   445 F.3d 634 (3d Cir. 2006) .....................................................................10, 11

*Whatcom Cnty. v. City of Bellingham,*
   909 P.2d 1303 (Wash. 1996) ..........................................................................15

**Statutes**

18 U.S.C. § 1955 ...................................................................................... 7, 8, 9

18 U.S.C. § 1961 .............................................................................................9

18 U.S.C. § 1962 ......................................................................................12, 13

31 U.S.C. § 5367 .............................................................................................9

Wash. Rev. Code § 9.46.200...................................................................2, 14, 15

## INTRODUCTION

Plaintiff's case is based on the implausible theory that QuiBids, American Express, and HSBC have formed an illegal gambling enterprise in violation of RICO and Washington state law, through the operation of QuiBids' auction website. In truth, the alleged "enterprise" is nothing more than a widely publicized and publicly accessible website controlled exclusively by QuiBids. Nothing in federal or state law supports Hertzog's causes of action.

*First*, Hertzog's RICO claims fail because he cannot prove injury or causation. Plaintiff argues in response that gambling losses can establish RICO injury where fraud is alleged too, but the cases he relies on all involve circumstances in which gambling activities are "rigged or manipulated." Here, even if QuiBids' auctions constituted gambling, Hertzog does not allege that the auctions were "rigged or manipulated." Moreover, Plaintiff's argument that RICO injury can be established by reference to a property right in state gambling law has even less support. Even if Hertzog were entitled to recover under Washington law—and he is not—it would not create an injury under RICO. With respect to causation, Plaintiff similarly falls short. Most importantly, Hertzog cannot refute that the sole cause of any alleged loss was his own bidding activity—not any conduct by QuiBids. And even if it were theoretically possible for him to adequately plead causation, his generic allegations are, in any event, inadequate.

*Second*, Hertzog's RICO claims are also deficient because he fails to adequately allege a RICO enterprise or to plead cognizable predicate acts. Plaintiff's responses are once again unavailing. Hertzog fails to make a plausible argument that HSBC and American Express were part of an enterprise based on their arms-length financing relationship with QuiBids. Nor can he refute the well-established principle that bank fraud and wire fraud may not be premised on alleged misrepresentations of law.

**Third**, Plaintiff is unable to refute Defendants' arguments that his RICO conspiracy claim fails because his underlying RICO claims fail. Rather, Hertzog asserts that the existence of an enterprise is not a necessary element of a claim for RICO conspiracy. While this is true, Hertzog must allege facts establishing that, if Defendants' supposed conspiracy came to fruition, a RICO enterprise **would ultimately result**. He has not done so.

**Fourth**, Hertzog's state-law claims should be dismissed because they apply only to "gambling," which does not encompass the conduct alleged in this case. Moreover, § 9.46.200 applies only to alleged gambling activity that is "authorized by" Washington state law—something that Hertzog has not alleged here.

## ARGUMENT & AUTHORITIES

### I. HERTZOG'S RICO CLAIMS FAIL BECAUSE HE LACKS STANDING.

#### A. Hertzog Has Not Alleged Injury to His Business Or Property.

As QuiBids established in its opening brief, Hertzog fails to allege cognizable injury to business or property because alleged gambling losses do not constitute injury under RICO. Mot. at 7-9. In response, Hertzog agrees that such losses do not qualify as injury when gamblers receive "'what they bargained for,'" but he argues that gambling losses **do** qualify as injury whenever "the defendant operating the gambling scheme has engaged in fraudulent or dishonest conduct." Pl.'s Resp. at 23. Alternatively, he argues, gambling losses should be recognized as an injury to property in this case because Washington state law "grants a property right to those who have lost money in illegal gambling." Pl.'s Resp. at 24. Neither contention is correct.

**First**, the cases Hertzog cites to support his claim that a gambling loss can establish RICO injury any time fraud is alleged do not support his position. Instead, they have a much narrower holding—i.e., that a gambler has not received the benefit of his or her

bargain when the gambling activity is rigged or manipulated. *See* Pl.'s Resp. at 23 & n.6 (citing four cases that all state the rule in these terms); *see also Adell v. Macon Cnty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1239 (M.D. Ala. 2011) (cited in Mot. at 7-8) (recognizing "a RICO injury may have existed had there been allegations that the gambling activity engaged in by the plaintiff was manipulated such that he or she did not in fact receive the chance to win that was purchased.").[1]

Nowhere in his Complaint does Hertzog allege that he lost the chance to win because QuiBids' auctions are "manipulated," and his response does not contend otherwise. Rather, the "injury to property" paragraph of the Complaint alleges that Hertzog and "the members of the proposed class [paid] millions of dollars in fees for 'bids' to an illegal gambling business." Compl. ¶ 83. Thus, even if QuiBids were, in fact, an "illegal gambling business," Hertzog fails to state a claim because he only alleges injury in the form of purported illegal gambling losses, which is insufficient as a matter of law. *See Adell*, 785 F. Supp. 2d at 1237 (noting that plaintiffs in that case unsuccessfully alleged RICO injury where they alleged only "that they suffered injuries in the form of [purported] illegal gambling losses").

**Second**, Hertzog is also wrong that he has alleged an injury to property because the State of Washington "grants a property right to those who have lost money in illegal gambling." Pl.'s Resp. at 24. State statutory rights do not establish an injury to property for RICO purposes. In *Major League Baseball Props., Inc. v. Price*, for example, the plaintiff argued

---

[1]    Each of Hertzog's authorities is so limited. *See Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 52 (E.D.N.Y. 2000) (injury might be established "if the licensors and manufacturers caused some tangible financial loss by misrepresenting the **odds** or by some other **swindle**") (emphases added); *Green v. Aztar Corp.*, No. 02-C-3514, 2003 WL 22012205, at *2 n.1 (N.D. Ill. Aug. 22, 2003) (the plaintiff did not allege injury under RICO where there was no allegation that defendants "**rigged**" the "gambling mechanism") (emphasis added); *Schwartz v. Upper Deck Co.*, 104 F. Supp. 2d 1228, 1231 (S.D. Cal. 2000) (rejecting injury argument because "[t]here is no allegation that Defendant has engaged in any sort of fraudulent or dishonest conduct such as misrepresenting to purchasers the **odds** of winning a chase card") (emphasis added).

that a state statutory right to recover gambling losses (under New York law) created a RICO "property" injury. 105 F. Supp. 2d 46, 52 (E.D.N.Y. 2000).[2] In rejecting this argument, the *Price* court explained that state gambling recovery laws, such as those adopted in New York (and Washington), are "directed only toward the purpose of eliminating the lottery promoter's financial incentive" and thus do "not have any retroactive effect on the [plaintiff's] consideration or by [themselves] indicate that gambling transactions are inherently injurious." *Id.* at 53. The court concluded that these "statutory right[s] share[] no nexus with federal RICO" because they are not designed to allow a plaintiff to recover an "injury" he suffered, but instead represent an attempt to deter future promoters of illegal gambling. *Id.* Thus, under the reasoning of *Price*, even if Washington's state gambling recovery statute afforded Hertzog a right to recovery, that would not establish an injury to property under RICO.[3]

**B.** **Hertzog Has Not Adequately Alleged Causation Or Reliance.**

Hertzog also lacks RICO standing because he has not sufficiently alleged causation or reliance. As elaborated in QuiBids' opening brief, Hertzog has offered only conclusory allegations of proximate causation, presumably because to the extent he sustained any loss, it is traceable solely to his own conduct. *See* Mot. at 10-12. Furthermore, to the extent Hertzog's claims are premised on fraud, he has not alleged reliance with the requisite

---

[2]  Plaintiff also cites *Price* in his brief for the unrelated proposition that gambling losses might be actionable if the gambling activity is manipulated, *see* Pl.'s Resp. at 23 n.6, but as set forth above, no such allegation is made here.

[3]  As explained in QuiBids' opening brief, *see* Mot. at 22-24, and detailed further below in Part IV, Hertzog has **not** plausibly alleged that he is entitled to recover money from QuiBids under Washington law. Thus, he would not have adequately alleged injury even if he were right that Washington law creates a RICO-cognizable property right in illegal gambling losses.

particularity. *See id.* at 12-14. Hertzog responds that his causation allegations are not conclusory and that he need not plead reliance. Neither contention is correct.

**First**, Hertzog fails to refute QuiBids' argument that his own voluntary gambling participation is the sole cause of any loss, making it impossible for him to demonstrate causation. *See* Mot. at 11 & n.3; *see also* Pl.'s Resp. at 25 (acknowledging that QuiBids argued that "his own conduct caused the injuries" but never responding to argument). On this basis alone, Hertzog lacks standing to sue and his RICO claims should be dismissed.

Even if it were possible for Hertzog to adequately plead causation, his conclusory allegations would not satisfy his pleading burden. Hertzog disagrees, arguing that the "Complaint explains the particular ways in which the QuiBids' website has misled prospective participants" and that he is a "direct victim of the Defendants' RICO violations." Pl.'s Resp. at 25-26 (citing Compl. ¶¶ 3, 21).[4] But these arguments are just as conclusory as the allegations on which they rely. For example, Paragraph 3 of the Complaint alleges that "Plaintiff used a credit card to transact business with Defendant QuiBids over the Internet and lost money as a result of Defendants' illegal gambling enterprise." But the only causal claim in that sentence—that Hertzog "lost money as a result of Defendants' illegal gambling enterprise"—is no more than a "'naked assertion[]' devoid of 'further factual enhancement'" and thus insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Paragraph 21 sets forth statements that Hertzog claims are false, and generically alleges that the statements have the "tendency to influence" or "are capable of influenc[ing]" those who read them, but stops

---

[4] Hertzog also claims that *Deppe v. Tripp*, 863 F.2d 1356 (7th Cir. 1988) stands for the proposition that he need not establish that he was injured by multiple predicate acts to establish causation. Pl.'s Resp. at 25. But that case involved whether there was sufficient evidence to demonstrate a "pattern of racketeering," and had nothing to do with the requirement to show proximate causation. *See* 863 F.2d at 1366.

short of alleging that any particular person was so influenced. In his Response, Hertzog has failed to identify a single allegation in his 100-paragraph Complaint that alleges causation in anything but the most abstract and conclusory legal terms.

**Second**, Hertzog's argument that he need not plead reliance with particularity is also wrong. Hertzog asserts that *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), eliminated the requirement of pleading reliance in all RICO cases. *See* Pl.'s Resp. at 27-28 & n.7. To the contrary, *Bridge* held only that **direct** reliance is not required in every RICO case; indeed, it expressly acknowledged that reliance would continue to play an important role in RICO cases presenting different facts. *See* 553 U.S. at 659. Consistent with that holding, courts have since held that where a plaintiff claims that he was tricked into parting with his money by the defendant's alleged misstatements, an allegation of reliance **is** still required. *See, e.g.*, *Senior v. Page*, No. 10-2886 (RBK/JS), 2011 WL 995942, at *4 (D.N.J. Mar. 16, 2011) ("Although reliance is not a **necessary** legal element of a RICO claim based on mail fraud, *Bridge*, 553 U.S. at 649, Plaintiff's only theory of causation and injury is that he unwittingly gave away $1,005,000 in inheritance because he relied on Defendant's alleged misrepresentations . . . . Reliance is therefore a necessary fact in Plaintiff's theory of causation even though it is not a necessary legal element of a RICO mail-fraud claim.") (emphases added).[5] Here, Hertzog's RICO claim is based on alleged fraud. *See* Compl. ¶ 69 (alleging "false and fraudulent . . . representations"). For this reason too, his claims should be dismissed.

---

[5] *See also Bridgewater v. Double Diamond-Del., Inc.*, No. 3:09-CV-1758, 2011 WL 1671021, at *11-12 (N.D. Tex. Apr. 29, 2011) ("*Bridge* does not establish the bright-line rule that plaintiffs asserting RICO claims based on mail fraud need not assert or establish their reliance on the fraud. . . . [I]ndividual class members must establish their reliance in order to prove their RICO mail fraud claim.").

## II.   HERTZOG CANNOT STATE A PLAUSIBLE RICO ENTERPRISE OR PREDICATE ACT.

### A.   Hertzog Has Not Alleged a RICO Enterprise.

As set forth in QuiBids' opening brief, Hertzog fails to allege an association-in-fact enterprise because he alleges only that HSBC and American Express provided consumer financing in arms-length transactions—not that they acted in pursuit of the alleged enterprise's purpose or that they enjoyed any control over its activities.  *See* Mot. at 15-17. Hertzog responds that: (1) HSBC and American Express were part of the enterprise because they were "acquiring banks" with a "direct business relationship with QuiBids"; and (2) HSBC and American Express violated the Unlawful Internet Gambling Enforcement Act of 2006 and 18 U.S.C. § 1955.  Pl.'s Resp. at 8-10.  Neither argument has merit.

*First*, Hertzog's claim that HSBC and American Express's roles as "acquiring banks" somehow renders them part of an association-in-fact enterprise with QuiBids is unsupported.  Hertzog contends that this fact serves to distinguish QuiBids' cases, which hold that the "mere existence of a contractual relationship for purposes of consumer financing cannot constitute a RICO enterprise," Mot. at 16 (citing *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1051 (W.D. Wis. 1999)), because the banks in those cases were "issuing banks," Pl.'s Resp. at 8.  But *Jubelirer* made nothing of this fact.  Instead, it held that "performing services" for a gambling enterprise, "including financial, accounting and legal services, does not support RICO liability because performance of such services is not the equivalent of participation in the operation and management of the enterprise."  68 F. Supp. 2d at 1053.  The same reasoning applies here.  Hertzog does not allege in his Complaint that the acquiring banks controlled the conduct of QuiBids or the purported enterprise, as he urges in his Response.  Pl.'s Resp. at 2.  Rather, his Complaint alleges that American Express and HSBC facilitated the operation by agreeing to provide financial services to QuiBids, and

that there were other individuals responsible for controlling QuiBids. Compl. ¶ 87(c) ("By agreeing to provide those [financial] services, [American Express] and HSBC agreed to *facilitate* the operation and management of the QuiBids penny auctions **by those individuals responsible for controlling them**.") (emphasis added). Thus, Hertzog's arguments are defeated by his own allegations.

In any event, Hertzog's theory that issuing and acquiring banks are treated differently for purposes of RICO liability has no support in the case law. To the contrary, in *Paycom Billing Services, Inc. v. Payment Resources International*, 212 F. Supp. 2d 732 (W.D. Mich. 2002), the court rejected similar RICO allegations against an acquiring bank on the ground that "[t]he allegations state no more than that [the acquiring bank, AmTrade] was a signatory to a Merchant Agreement and that it engaged in certain conduct pursuant to or in violation of that agreement." *Id.* at 741. Recognizing that "[t]here is no factual allegation that AmTrade controlled [its co-defendant] or operated outside the Merchant Agreement as a banking entity," the court concluded that the plaintiff's complaint "does not adequately allege that Defendant AmTrade conducted or participated in the conduct of an enterprise through racketeering activity" and thus failed to state a RICO claim. *Id.* In other words, *Paycom Billing* confirms that the enterprise inquiry focuses on control, not on the extent of financial services provided by a bank or its status as an issuing or acquiring institution.

**Second**, Hertzog is also wrong that his UIGEA or § 1955 claims add something to the enterprise analysis. Neither statute purports to expand the definition of a RICO enterprise such that violators could incur RICO liability merely by financing a gambling business without further involvement. Indeed, like the RICO law governing the pleading of association-in-fact enterprises, the UIGEA contemplates some level of control of the gambling operation as a predicate to liability. *See, e.g.*, Pl.'s Resp. at 10 (recognizing

"[f]inancial service providers are liable for violations of the UIGEA only [where they] . . . '(1) operate, manage[] supervise[] or direct[] an Internet website at which unlawful bets or wagers may be placed, received, or otherwise made . . . ; or (2) own[] or control[], or [are] owned or controlled by, any person who operates, manages, supervises, or directs [those] Internet website[s]'") (quoting 31 U.S.C. § 5367).[6]  And although § 1955 contemplates liability for the "financing" of an illegal gambling business, that definition pertains only to *liability* under 18 U.S.C. § 1955; it does not follow that a violation of § 1955 automatically renders the breaching party a part of a gambling enterprise.  To the contrary, as the Supreme Court explained in *Reves*, a civil RICO claimant would still have to separately establish that each alleged member of the enterprise actually "manages, supervises, [or] directs" the conduct of the enterprise.  *Reves v. Ernst & Young*, 507 U.S. 170, 178 & n.3 (1993) (internal quotation marks and citation omitted).  Hertzog has not done that here, and his enterprise claim thus fails as a matter of law.

### B.    Hertzog's Allegations of Predicate Acts Are Inadequate.

As explained in QuiBids' opening brief, Hertzog's RICO claims fail for the additional reason that he has not sufficiently alleged predicate acts of bank fraud or wire fraud.  This is so because: (1) bank fraud and wire fraud may not be premised on alleged misrepresentations of law; and (2) Hertzog lacks standing to assert claim for bank fraud.  *See* Mot. at 19-20.  Hertzog offers three arguments in response, each of which are fatally flawed.

***First***, Hertzog acknowledges the general rule that misrepresentations of law are not actionable under RICO, but he contends that an exception to this rule applies because QuiBids has "'superior knowledge'" of the "underlying facts" about how its auctions

---

[6]    Hertzog concedes that he is not attempting to use the UIGEA as a predicate act for racketeering (Pl.'s Resp. at 18); nor could he because it does not fall within the purview of 18 U.S.C. § 1961(1) and thus is not a racketeering activity (*see* Mot. at 9 n.2).

operate. Pl.'s Resp. at 30. Not so. This narrow exception applies only where the defendant "purports to have special knowledge" or has a fiduciary or other special relationship with the plaintiff. *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) (rejecting claim that exception applied where the defendants "did not purport to have expert or superior knowledge").[7] No such allegation is made here. Hertzog alleges only that QuiBids claims on its website that its auctions are not a "lottery or gambling," Compl. ¶ 21.a, not that QuiBids has superior legal knowledge on that issue.

**Second**, Hertzog is incorrect that he has standing to assert a RICO claim based on bank fraud. Although Hertzog admits that he is not a financial institution, his charge of bank fraud against QuiBids is viable because "the bank fraud committed by QuiBids was directed at two victims—the penny auction participants **and** the banks that issued the credit cards that the participants used." Pl.'s Resp. at 31. In pressing this argument, Hertzog ignores all of the cases cited by QuiBids and relies instead on *United States v. Leahy*, 445 F.3d 634 (3d Cir. 2006), for the proposition that "'a bank need not be the sole or immediate victim of the fraud.'" Pl.'s Resp. at 31 (quoting *Leahy*, 445 F.3d at 662). But Hertzog's reliance on *Leahy* is misplaced. For one thing, *Leahy*, a non-RICO criminal case, did not address the standing argument advanced by QuiBids and does not overrule, modify, or

---

[7]     Hertzog's cases, neither of which involves RICO, are consistent with this construction of the exception. Indeed, although both recognized its existence, both denied its applicability to the facts before them. In *First Nat'l Bank & Trust Co. of Muskogee v. Muskogee Discount House*, 382 P.2d 137 (Okla. 1963) (cited in Pl.'s Resp. at 29), for example, the Oklahoma Supreme Court held that the defendant lessee could not rely on alleged misrepresentations regarding the legal effect of a termination clause in a lease agreement. *Id.* at 139-40. According to the court, any exception to the general rule against relying on legal opinions did not apply because there was no allegation or evidence that a "relationship of trust and confidence existed" or that any party had superior knowledge. *Id.* at 139. Hertzog's second case, *Meacham v. Halley*, 103 F.2d 967 (5th Cir. 1939) (cited in Pl.'s Resp. at 30), similarly involved a legal opinion about a lease, and it too rejected the exception for superior knowledge because the case involved "dealings between strangers where no confidence is reposed." *Id.* at 972.

appear to apply in any regard to the holding of the cases cited in QuiBids' opening brief that non-bank claimants lack standing to assert RICO claims based on the bank fraud statute. *See* Mot. at 20-21 (citing cases). In any event, *Leahy* confirms the inadequacy of Hertzog's allegations. In that case, the Third Circuit held that a bank-fraud conviction could stand where the government had argued to the jury that the fraudulent conduct harmed both the bank and its customers, but its reasoning underscored the necessity of an allegation that the banks were the target of the fraud: "[e]ven if the banks' customers were harmed as a result of the fraudulent scheme, there [was] still ample evidence that the Defendants[] had an intent to defraud the banks." 445 F.3d at 662. Nothing like that is alleged here. The Complaint does not assert that QuiBids perpetrated a fraud that caused any bank to transfer funds. To the contrary, the bank-fraud portion of the Complaint alleges that "[a]s a direct and proximate cause of QuiBids scheme to defraud . . . the **Plaintiff** and other **similarly situated** individuals were directly injured. . . . The money of the **Plaintiff** and other **similarly situated** individuals was the **direct** target of QuiBids scheme to defraud." Compl. ¶ 72 (emphases added). Accordingly, this argument also fails.[8]

**Finally**, Hertzog's attempt to premise RICO liability on his contention that the purported RICO enterprise has collected unlawful debts, Pl.'s Resp. at 32-33, is similarly without merit. To establish a claim for RICO based on the collection of an unlawful debt, the plaintiff must prove that a "debt was . . . collected" from the plaintiff by the defendant. *Nelson v. MGM Grand Hotel, LLC*, 287 F. App'x 587, 589 (9th Cir. 2008) (dismissing RICO claim because, *inter alia*, "no 'debt' was ever collected"). Applying this principle, courts have regularly dismissed RICO claims where—as here—there is no allegation that the defendant

---

[8] Even if it could be said that the bank fraud statute had been violated because QuiBids' alleged scheme of fraud caused Hertzog to direct a federally insured bank to transfer funds, in the absence of an allegation that a bank itself was defrauded, Hertzog's bank fraud claim fails in any event. and should be dismissed.

collected an unlawful debt from the plaintiff. *See, e.g.*, *id.*; *Perry v. Laidlaw Transit Servs., Inc.*, 234 F. App'x 634, 634 (9th Cir. 2007) ("The district court properly dismissed Perry's claims brought under RICO because Perry did not allege facts indicating that defendants collected an unlawful debt[.]"). Here, Hertzog does not allege that QuiBids ever extended any credit to him, and thus he cannot possibly claim that QuiBids has collected a debt of any kind from him, let alone an unlawful debt.[9]

## III. HERTZOG'S RICO CONSPIRACY CLAIM FAILS AS A MATTER OF LAW.

As set forth in QuiBids' opening brief, Hertzog's RICO conspiracy claim fails because he has not pled a viable RICO claim, which is a prerequisite to a viable RICO conspiracy claim. Mot. at 21-22. Hertzog disagrees, contending that he can allege a RICO conspiracy under *United States v. Harris*, 695 F.3d 1125 (10th Cir. 2012), because (1) such a conspiracy does not require "'the existence of an enterprise'" but only a conspiracy or agreement to eventually participate in an enterprise; and (2) such a conspiracy can exist even if some of the alleged conspirators (here, HSBC and American Express) are not actually part of the planned enterprise. Pl.'s Resp. at 33-34. Hertzog is incorrect.

Even applying *Harris*, the shortcomings in Hertzog's enterprise allegations are evident. The *Harris* court, while stating that "the **existence** of an enterprise is not an element," further clarified that the plaintiff must show that if the defendants' plans came to fruition, a RICO enterprise **would ultimately result**. 695 F.3d at 1131, 1133 (emphasis added); *see also id.* at 1133 (explaining that for purposes of § 1962(d), "it suffices that a defendant adopt the goal of furthering or facilitating the criminal endeavor, so long as that

---

[9]     Additionally, as discussed below in the section on Washington state law claims, because Hertzog has not alleged any facts showing that QuiBids conducts gambling, each of the predicate acts that relies on or references state gambling laws should fail.

endeavor would, ***if completed***, . . . satisfy all the elements of a substantive criminal offense") (internal quotation marks and citation omitted). As discussed above, no RICO enterprise was ever formed among QuiBids, American Express and HSBC through merchant agreements. And because there is no further allegation that some additional act would create an enterprise where these previous acts had not, there is no basis to conclude that an enterprise will ever result. Accordingly, *Harris* does not support Hertzog's § 1962(d) claims.[10]

Hertzog's theory that he could allege a conspiracy even if HSBC and American Express were not part of the enterprise, Pl.'s Resp. at 34, is also flawed. Hertzog contends that a defendant can conspire to violate RICO without planning personally to commit a predicate act of racketeering, so long as that defendant "'knowingly agree[s] to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner,'" and that HSBC and American Express did so by facilitating QuiBids' operation of penny auctions. Pl.'s Resp. at 34 (quoting *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000)). But this theory would leave QuiBids as the only alleged participant in the "enterprise," which by definition fails because a lone party cannot, by itself, constitute a RICO enterprise. *See, e.g., Marlow v. Allianz Life Ins. Co. of N. Am.*, No. 08-cv-752, 2009 U.S. Dist. LEXIS 43502, at *16 (D. Colo. May 12, 2009) ("numerous courts

---

[10] Moreover, Hertzog's argument that "'the existence of an enterprise is not an element of § 1962(d) conspiracy'" under *Harris*, Pl.'s Resp. at 34 (citation omitted), ignores the fact that his RICO claims suffer from numerous other deficiencies, such as lack of standing and lack of sufficient allegations of predicate acts. Hertzog does not submit any authority to suggest that these failures do not require dismissal of his conspiracy claim. Hertzog's argument also overlooks the fact that the type of conspiracy described in *Harris* has other elements. As Hertzog's response acknowledges, these elements include that each of the Defendants "joined or became a member of the conspiracy or agreement **with knowledge of its purpose**" or "**agreed** that someone, not necessarily the defendant, would commit at least two of the racketeering acts." *Harris*, 695 F.3d at 1131 (emphases added); *see also* Pl.'s Resp. at 33-34 (acknowledging these elements). Nothing in the Complaint makes such an allegation, and Hertzog does not even attempt to argue otherwise in his response.

have indicated that where an alleged enterprise is really nothing more than a defendant corporation and its affiliates and associates . . . RICO liability does not attach"). For all of these reasons, Hertzog's RICO conspiracy claim should be dismissed.

## IV. **HERTZOG'S STATE LAW CLAIMS SHOULD BE DISMISSED.**

Hertzog's state law claims fail because bidding on QuiBids is not gambling under Washington law, and because Wash. Rev. Code § 9.46.200 applies only to "authorized" gambling, which is not alleged here. *See* Mot. at 22-24. Hertzog's arguments in response lack merit.

*First*, Hertzog has not alleged gambling because neither party "risks" anything. The bidder risks nothing because, as stated in the opening brief, the bid value never hangs in the balance: winning and losing bidders alike cannot get a refund for the bids spent in an auction. *See* Mot. at 22-23. Hertzog responds that bids do hang in the balance because a winning bidder has "the amount of his bids . . . refunded to him or her," Pl.'s Resp. at 39, but that is not accurate. If the user's bid is the last bid placed in the auction—*i.e.*, it is the "winning" bid—the user is then given the opportunity to purchase the item for the price stated. If and when the user who places this "successful" bid exercises the option to purchase the item at the stated price, he receives no offset for the $0.60 it cost him to place the "successful" bid or any money he previously spent placing "unsuccessful" bids. In other words, as Hertzog's Complaint correctly recognizes, QuiBids charges "a non-refundable fee of $0.60 for each 'bid'" a user places. Compl. ¶ 11. Whether a user ultimately fails to be the highest bidder, or chooses to lose the collective value of any unsuccessful bids on an item, is always totally within his or her control. A bidder always has the option to place another bid, and continue placing bids, until he or she either (1) becomes the highest bidder or (2) reaches the "buy now" price and receives the product. Moreover, a bidder that chooses

to stop bidding always has the option of using the "Buy Now" feature to have the value of his or her bids credited toward the purchase price.[11]

**Second**, Hertzog is also wrong that he has alleged that QuiBids could be liable under § 9.46.200, which applies to state "authorized" gambling. Hertzog's logic is flawed in arguing that because the state authorizes *some* lotteries, the statute concerning authorized gambling should apply to *all* lotteries, authorized or not. Pl.'s Resp. at 46. This argument, if accepted, would render the word "authorized" in § 9.46.200 superfluous, in violation of basic rules of statutory construction. *See, e.g.*, *Whatcom Cnty. v. City of Bellingham*, 909 P.2d 1303, 1308 (Wash. 1996) (en banc). Accordingly, Hertzog cannot state a claim under § 9.46.200.

## CONCLUSION

For these reasons and those stated in QuiBids' Motion and original brief, QuiBids respectfully requests that the Court dismiss all claims against QuiBids in Hertzog's Complaint.

---

[11] Hertzog attempts to downplay the significance of the "Buy Now" feature, contending in a footnote that a similar argument was rejected in *Classic Oldsmobile-Cadillac-GMC Truck, Inc. v. State*, 704 A.2d 333 (Me. 1997) (cited in Pl.'s Resp. at 40 n.10). But in *Classic*, the car dealership and participating customers both accepted some risk: the dealer would cover twelve months of lease payments for customers who entered new leases, but only if the temperature equaled or exceeded 96 degrees on a subsequent date. *Id.* at 333. Because each party "necessarily risk[ed] something" in this arrangement, the court concluded that the dealership had conducted an illegal "game of chance." *Id.* at 334-35. A QuiBids auction is not analogous because bidders face no prospect of recovering their bids, and QuiBids does not risk losing those bids to its customers.

Respectfully submitted,


_/s/ Michael D. McClintock_
Reid E. Robison, OBA #7692
Michael D. McClintock, OBA #18105
Michael K. Avery, OBA #22476
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK  73102
Telephone:    (405) 235-9621
Facsimile:     (405) 235-0439
reid.robison@mcafeetaft.com
michael.mcclintock@mcafeetaft.com
michael.avery@mcafeetaft.com

**ATTORNEYS FOR DEFENDANTS
QUIBIDS LLC AND QUIBIDS
HOLDINGS LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that January 11, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Bret D Davis
bdavis@lamunmock.com, kbryant@lamunmock.com

Gregory T Metcalfe
gmetcalfe@gablelaw.com, courtfiling@gablelaw.com, mmccall@gablelaw.com

Jason H Kislin
kislinj@gtlaw.com

Louis Smith
smithlo@gtlaw.com, crowleym@gtlaw.com, petersr@gtlaw.com

Rabindranath Ramana
rramana@calvertlaw.com, srogers@calvertlaw.com

Randall K Calvert
rcalvert@calvertlaw.com, srogers@calvertlaw.com

Sidney G Dunagan
sdunagan@gablelaw.com, cjann@gablelaw.com, courtfiling@gablelaw.com

William W Houck
houcklaw@gmail.com, houck@houcklaw.com, houcklaw@comcast.net


s/Michael D. McClintock
Michael D. McClintock